**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Darrell Allen,              )
                            )
       Plaintiff,      ) Case No. 1:13-CV-811
                            )
vs.                         )
                            )
Atrium Medical Center,      )
                            )
       Defendant.      )

**O R D E R**

This matter is before the Court on Defendant Atrium Medical Center's motion for summary judgment.  Doc. No. 24.  For the reasons that follow, Defendant's motion for summary judgment is well-taken and is **GRANTED.**

I. Background

Plaintiff Darrell Allen was a well-regarded general maintenance mechanic who worked for Defendant Atrium Medical Center ("Atrium") in Middletown, Ohio for 42 years until he was terminated in December 2012 for creating life safety violations.  Plaintiff claims, however, that Atrium terminated him based on age and disability in violation of federal and state law.  The basic facts of the case are not in dispute.

Atrium Medical Center is a full-service hospital.  Atrium employed Plaintiff as a general maintenance mechanic and he was responsible, inter alia, for the maintenance needs of the third floor of the hospital.  Plaintiff was 60 years old at the time of his termination.  He had a massive heart attack in 2001 and had a pacemaker implanted in 2012.

In October 2012, a series of incidents with staff members burning food items in toasters or toaster ovens caused Atrium to ban all open-element cooking appliances from all areas of the hospital except for the cafeteria. The precipitating event was when a nurse burned a croissant in a toaster located in a third-floor break room, causing smoke to disperse throughout much of the floor. Atrium thereafter considered open-element cooking devices to present a health and safety threat to its patients.

The hospital has a number of mechanical rooms it uses to house electrical, computer, and other equipment needed to operate the building. Each floor also has an air-handling room that contains equipment to circulate air throughout that floor. Due to a lack of space in the hospital, mechanics were permitted to use mechanical rooms to complete discrete projects, such as repairing furniture or building shelving units. Mechanics were also permitted to store their tools, work carts, and some basic supplies in mechanical rooms. The hospital, however, prohibited employees from utilizing mechanical rooms as a break area or personal work space. The hospital also prohibited employees from eating or storing food in mechanical rooms. Neumann Dep. (Doc. No. 17), at 64-67, 125, 131-32; Banks Dep. (Doc. No. 22), at 25. Otherwise, the first floor of the hospital had a maintenance shop from which maintenance staff were supposed to operate.

In November 2012, Atrium's infection control coordinator, Charlene Kurtz, conducted a routine inspection of the third floor to ensure compliance with infection control policies. When Kurtz entered to inspect the third floor air-handling room she discovered that Plaintiff had set up his own personal workspace and break room in there. Plaintiff had moved into the room a desk and a chair and a refrigerator. Plaintiff had in the refrigerator, and elsewhere, raw eggs, pickles, orange juice, milk, bread, lunch meat, peanut butter,

2

pistachio nuts, cooking oil, and cooking spray. There was also a toaster, a griddle, a hot plate, and a skillet. Finally, there were cardboard boxes scattered about the floor, apparently because Plaintiff was assembling some shelves. The boxes were considered both a fire hazard and an insect attraction. The conditions in the air handling room presented a number of health and safety hazards and put the hospital in violation of several code provisions it needed to satisfy in order to maintain its accreditation.

Plaintiff entered the room while Kurtz was still there. Plaintiff apologized for the condition of the room and stated that he knew that "it's not supposed to be up here." Plaintiff admitted later that he moved the contraband items from the air handling room whenever he learned that outside agencies were coming to inspect the hospital. Doc. No. 16-1, at 3. While Kurtz did not expect disciplinary action to result from the condition of the air handling room, she did order it to be cleaned up and all of the prohibited items to be removed within two days. Kurtz Dep. (Doc. No. 23), at 18, 51, 52; Neumann Dep. (Doc. No. 17), at 81-82.

In the meantime, the hospital conducted a separate investigation and concluded that Plaintiff had been cooking in the air handling room in violation of hospital policy. The hospital determined that the presence of the toaster, griddle, and hot plate in that mechanical room presented a substantial threat to patient health and safety because smoke could have been inducted into air handling system and dispersed throughout the floor. Neumann Dep. at 124-25; Banks Dep. at 24-25, 31-32. In his deposition, Plaintiff denied using the toaster and griddle in the air handling room, and that he ever cooked anything in the skillet. He did admit, however, that he boiled eggs in the air handling room. Plaint. Dep. (Doc. No. 16) at 48-50.

3

The hospital has a progressive discipline policy, which can range from an oral reprimand all the way through level 5 discipline, which is termination. Neumann Dep. at 67-69. The hospital eventually decided that Plaintiff's conduct warranted level 5 discipline despite his long tenure and good work record. In reaching that decision, the hospital relied on the seriousness of the health hazard that Plaintiff's conduct presented. Additionally, the hospital was concerned that Plaintiff did not appear to appreciate or understand seriousness of his conduct. For instance, during a meeting with Greg Neumann, the director of plant services, Plaintiff downplayed the incident by telling him that he always moved the contraband from the room before an outside inspection. In other words, Plaintiff seemed to indicate that, despite the health hazards it presented, his personal breakroom was not a problem because he was able to successfully conceal it from the inspectors. He also asked Neumann to "sweep the incident under the rug." According to Neumann, Plaintiff's response to the incident was unacceptable. Consequently, he decided that Plaintiff's conduct justified termination instead of lesser discipline. Neumann Dep. at 146-48, 154-55, 168-69.

The record indicates that Atrium did not replace Plaintiff after his termination. Instead, his duties were distributed among other mechanics. Additionally, Plaintiff, as well as the other general mechanics, used to perform life safety maintenance functions as part of his duties as a general mechanic. However, following through on plans that long pre-existed Plaintiff's termination, Atrium created two new "life safety" mechanic positions. While the life safety mechanics have the same job description as the general mechanics, in actual practice the life safety mechanics focus specifically on inspecting, repairing, and documenting repairs to fire safety and prevention equipment, such as fire doors and

4

sprinklers. In other words, life safety functions were removed from the general mechanics and consolidated into the life safety mechanic positions. Neumann Dep. at 26-29, 37-41, 47-48, 178-82.

After his termination, Plaintiff filed a complaint of discrimination with the Equal Employment Opportunity Commission and received a right-to-sue letter. He then filed a timely complaint against Atrium alleging federal and state age and disability discrimination claims. Following the close of discovery, Atrium filed a motion for summary judgment on each of Plaintiff's claims which is now ready for disposition.

## II. Summary Judgment Standard of Review

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An assertion of a undisputed fact must be supported by citations to particular parts of the record, including depositions, affidavits, admissions, and interrogatory answers. The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation omitted).

The Court is not duty bound to search the entire record in an effort to establish a lack of material facts. Guarino v. Brookfield Township Trs., 980 F.2d 399, 404 (6th Cir. 1992). Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. Anderson, 477 U.S. at 250. The non-moving party "must do more than simply show that

5

there is some metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. "If the evidence is merely colorable, . . . or is not significantly probative, . . . the court may grant judgment." Anderson, 477 U.S. at 249-50 (citations omitted).

### III. Analysis

Plaintiff has not adduced any direct evidence that his age or alleged disability played any part in Atrium's decision to terminate his employment. Accordingly, Plaintiff must establish his employment discrimination claims through the familiar McDonnell Douglas burden-shifting framework. Blizzard v. Marion Tech. College, 698 F.3d 275, 284 (6th Cir. 2012). Finally, the Ohio Civil Rights Act and the federal employment discrimination statutes employ the same evidentiary standards. Williams v. Ford Motor Co., 187 F.3d 533, 538 (6th Cir. 1999). Consequently, the Court may analyze Plaintiff's state and federal discrimination claims together.

#### A. Age Discrimination

Plaintiff first claims that Atrium terminated him because of his age. In order to establish a prima facie case of age discrimination, Plaintiff must adduce sufficient evidence

on each of the following elements:  1) he is a member of a protected class, that is, he was at least 40 years old; 2) he suffered an adverse employment action; 3) he was qualified for the job lost or not gained; and 4) that a person substantially younger than him replaced or was selected over him, or that the position remained open while the employer sought other applicants.  O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 (1996); Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1186 n.12 (6th Cir. 1996); Cooley v. Carmike Cinemas, Inc., 25 F.3d 1325, 1329 (6th Cir. 1994).  A plaintiff may also satisfy the fourth element by showing that the defendant treated similarly-situated non-protected persons more favorably than him.  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995).

Once the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the employer to proffer a legitimate, non-discriminatory reason for its decision.  Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1082 (6th Cir. 1994). If the employer meets its burden of production, the burden shifts back to the plaintiff to show that the reasons proffered by the defendant are pretextual.  Id.

The plaintiff may prove pretext in three ways:  1) by showing that the defendant's reasons had no basis in fact; 2) by showing that the reasons did not actually motivate the defendant; or, 3) by showing that the proffered reasons were not sufficient to warrant the action taken.  Kline v. Tennessee Valley Auth., 128 F.3d 337, 346 (6th Cir. 1997).  When the plaintiff proves pretext by the first or third methods, the fact finder may infer discrimination and the plaintiff need not produce any additional evidence of discrimination. Id.  In the second situation, the factual basis for the discharge is not challenged; therefore,

the plaintiff must adduce additional evidence of discrimination in order to prevail. Id. at 346-47.

The burden of persuasion remains with the plaintiff at all times. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993). The plaintiff must prove that the employer would not have taken the adverse employment action "but for" his age. Scheick v. Tecumseh Pub. Sch., 766 F.3d 523, 539 (6th Cir. 2014). This means that the plaintiff must show that his age was "the reason" the employer decided to act. Id.

Although Atrium argues that Plaintiff cannot establish a prima facie case of age discrimination because he was not replaced after his termination, the Court will assume that he can because he has not shown a triable issue of fact on the issue of pretext.

First, however, the Court notes that Atrium clearly had a legitimate, non-discriminatory reason for terminating Plaintiff's employment. Plaintiff's establishment of a prohibited office space and break area in the air handling room, and his subsequent failure to accept full responsibility for his conduct, are reasons for the adverse employment action that are not related to his age (or his disability for that matter). The burden, therefore, shifts to Plaintiff to produce evidence of pretext sufficient for a reasonable juror to find that Atrium is lying about its reasons for terminating him.

In attempting to meet this burden, Plaintiff contends principally that his conduct was insufficient to warrant his termination because other substantially younger employees committed "life safety" violations and were not terminated. Plaintiff also points out that inspections over several years noted numerous life safety violations in the hospital that did not result in any employees being terminated. Plaintiff notes further that after his termination, Atrium discovered several other toasters in prohibited areas and yet no

employees were terminated for these violations. Plaintiff also relies on the fact that his department supervisor, who he claims was aware of and acquiesced in his personal break room, was not terminated but rather was only placed on an improvement plan for allowing the violations. All of this evidence, Plaintiff argues, indicates that Atrium's reasons for terminating him are pretextual.

Atrium correctly responds, however, that Plaintiff has not shown that he was similarly-situated to the employees in these other situations. The Court recognizes that being "similarly-situated" does not require an exact correlation between the plaintiff's conduct and the comparators' conduct. Clayton v. Meijer, Inc., 281 F.3d 605, 610-11 (6th Cir. 2002). Nevertheless, Plaintiff's conduct in this case is too dissimilar from the other employees' conduct for a reasonable juror to conclude that Atrium treated him discriminatorily. First, the employees Plaintiff identifies who committed other life safety violations did not compromise patient safety. Two employees were disciplined for not wearing safety harnesses while working outdoors on a scissors lift. This was not comparable conduct, however. These employees jeopardized their own safety, but they did not jeopardize patient safety the way Plaintiff did. Similarly, the two employees who were cited for engaging in a heated argument in a public area did not compromise patient safety. Neumann Dep. at 161-63.

Moreover, in this case, the fact that inspections uncovered numerous other life safety violations that did not result in any employees being terminated does not demonstrate pretext. As Atrium points out in its papers, many of these other life safety violations occurred as a result of normal wear and tear on hospital facilities. For instance, there were notations about unrepaired holes in walls or doors. Other life safety violations

9

noted by Plaintiff were more along the lines of negligent violations. For instance, inspections discovered supplies and food on hand past their expiration date. But whatever the cause, none of these life safety violations was shown to be caused by the intentional conduct of an employee. In contrast, Plaintiff affirmatively created the conditions that caused serious life safety violations. Accordingly, these other life safety violations are not similar to Plaintiff's conduct.

Although Atrium did discover other toasters in prohibited areas after Plaintiff's termination, he has not contravened Atrium's contention that it was not able to discover who was responsible for those violations. Again, this evidence is insufficient to establish pretext.

Finally, Plaintiff overstates his case by arguing that his supervisors condoned his break room but received lesser punishment than him. At best, the record shows that his supervisors knew about <u>the desk, the chair, and the refrigerator</u>, but not the other contraband, and then at most for only about a month before the inspection. Neumann Dep. at 104-05, 138-44; Cotterman Dep. (Doc. No. 26) at 40-44, 75-76; Lee Dep. (Doc. No. 18) at 35-36. By his own reckoning, however, Plaintiff had all of the prohibited items in the mechanical room for at least two months before Kurtz's inspection. Plaint. Dep. at 43. Moreover, Plaintiff has not shown that his supervisors knew about and condoned his boiling eggs in the air handling room. Additionally, Plaintiff admitted that he concealed his violations from the outside inspectors and auditors. Doc. No. 16-1, at 3. There is a substantial difference between failing to act to remedy a violation and affirmatively creating a longstanding and serious safety violation and then actively concealing it. Plaintiff's conduct was not substantially similar to his supervisors' conduct.

10

To the extent that Plaintiff has adduced any evidence of pretext, it is extremely weak and insufficient to advance his case beyond the summary judgment stage. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000) (holding that an employer is entitled to a judgment as a matter of law where "plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred"). Plaintiff's misconduct was blatant and, excepting some minor details, such as whether he did anything other than boil eggs in the air handling room, indisputably occurred. Plaintiff worked for Atrium for at least twenty years while in the protected age group and received good evaluations and remained highly-regarded as an employee during that period of time. Nothing in the record suggests that Atrium suddenly developed animus toward Plaintiff because of his age and seized upon his admitted safety violations as a cover to terminate his employment.

Atrium, therefore, is entitled to summary judgment on Plaintiff's age discrimination claims.

### B. Disability Discrimination

Plaintiff also claims that Atrium terminated his employment because of his disability. The Court, however, need not proceed through a lengthy analysis of this claim. Evidence that Plaintiff's disability - to the extent that he has established one[1] - played any part in his

---

[1] Plaintiff apparently did not have any significant work limitations as a result of his pacemaker and he did not indicate that he has any limitations at all in his activities of daily living. He was unable to enter certain areas of the hospital, such as the MRI and generator rooms, but that appears to be the extent of any limitations created by his pacemaker. See Plaint. Dep. (Doc. No. 16 at 28-29)("The first two weeks [after returning to work I] was restricted just a little, you know, and then after the two weeks, I

11

termination is almost wholly lacking. In fact, as just indicated by the Court, the record is compelling and nearly overwhelming that Atrium terminated Plaintiff solely because of his misconduct and not for any other reason.

Accordingly, Atrium is entitled to summary judgment on Plaintiff's disability discrimination claims.

## Conclusion

For the reasons stated above, on this record, a reasonable juror could not find that Plaintiff's age and disability played any part in Defendant's decision to terminate his employment. Accordingly, Defendant's motion for summary judgment is well-taken and is **GRANTED.** The complaint is **DISMISSED WITH PREJUDICE. THIS CASE IS CLOSED.**

**IT IS SO ORDERED**

Date April 14, 2015　　　　　　　　　　s/Sandra S. Beckwith
　　　　　　　　　　　　　　　　　　　　Sandra S. Beckwith
　　　　　　　　　　　　　　　　　　　Senior United States District Judge

---

went full bore, back to full bore."). Therefore, Plaintiff is arguably not significantly limited in a major life activity and therefore, not disabled within the meaning of the ADA. See, e.g., Foreman v. The Babcock & Wilcox Co., 117 F.3d 800, 805-06 (5th Cir.1997) (employee with surgically implanted pacemaker not substantially limited in the major life activity of working); Carper v. TWC Services, Inc., 820 F. Supp.2d 1339, 1352-53 (S.D.Fla. 2011)(employee with heart pacemaker not substantially limited in any major life activity). Given, however, the lack of evidence of pretext concerning the reason for his termination, the Court need not resolve this question.